*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

| | |
|---|---|
| *MARYLYN J. BLACK,* | ) |
| *Plaintiff* | ) ) ) ) |
| v. | )     *Docket No. 04-233-P-S* |
| *JO ANNE B. BARNHART,* *Commissioner of Social Security,* | ) ) ) ) |
| *Defendant* | ) |

*REPORT AND RECOMMENDED DECISION*[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the issue whether substantial evidence supports the commissioner's determination that the plaintiff, who alleges disability stemming from fibromyalgia and depression, is capable of making an adjustment to work existing in significant numbers in the national economy. I recommend that the decision of the commissioner be affirmed.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had a depressive disorder – an impairment that was severe but did not meet or equal any listed in Appendix 1 to Subpart P, 20 C.F.R.

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on May 19, 2005, pursuant to Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority and page references to the administrative record.

§ 404 (the "Listings"), Findings 3-4, Record at 23; that she retained an unlimited physical residual functional capacity ("RFC") with inability to perform more than simple, unskilled work due to moderate concentration deficits, Finding 7, *id*.; that, considering the types of work she was still functionally capable of performing, in combination with her age ("closely approaching advanced age"), education (high school) and work experience (no transferable skills), she could be expected to make a vocational adjustment to work existing in significant numbers in the national economy (such as office janitor/cleaner, inspector and hand packer), Findings 9-12, *id*. at 23-24; and that she therefore had not been under a disability at any time through the date of decision, Finding 13, *id*. at 24.[2] The Appeals Council declined to review the decision, *id*. at 5-7, making it the final determination of the commissioner, 20 C.F.R. §§ 404.981; 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain positive evidence in support of the

---

[2] Inasmuch as the plaintiff had acquired sufficient quarters of coverage to remain insured for purposes of SSD through the date of decision, *see* Finding 1, Record at 23, there was no need to undertake a separate SSD analysis.

commissioner's findings regarding the plaintiff's residual work capacity to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff's argument also implicates Step 2 of the sequential evaluation process. Although a claimant bears the burden of proof at this step, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1123 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* at 1124 (quoting Social Security Ruling 85-28).

The plaintiff asserts that the administrative law judge erred in failing to (i) find a severe impairment of fibromyalgia, (ii) give adequate weight to opinions of treating sources or (iii) properly analyze complaints of pain. *See* Itemized Statement of Errors Pursuant to Local Rule 16.3 Submitted by Plaintiff ("Statement of Errors") (Docket No. 6) at 2-5. I find no reversible error.

## I. Discussion

### A. Fibromyalgia

The plaintiff first asserts that she met her *de minimis* burden of demonstrating the existence of a severe fibromyalgia impairment, as a result of which the administrative law judge erred in failing to so find. *See id.* at 2-3. I am unpersuaded. An administrative law judge is entitled – indeed, obliged – to resolve conflicts in the medical evidence. *See, e.g.*, *Rodriguez*, 647 F.2d at 222 ("The Secretary may (and, under his regulations, must) take medical evidence. But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for him, not for the doctors or for the courts.").

Such a conflict is present in this case with respect to the threshold question whether the evidence establishes, as an objective medical fact, that the plaintiff suffered from fibromyalgia. *See* Social Security Ruling 96-7p, reprinted in *West's Social Security Reporting Service,* Rulings 1983-1991 (Supp. 2004) ("SSR 96-7p"), at 133 ("No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms.").

It is true, as the plaintiff points out, *see* Statement of Errors at 2-3, that the Record contains evidence that she did suffer from fibromyalgia in the form of records of her treating physician William E. Chernin, M.D., to wit: (i) progress notes in which he intermittently noted from October 1999 through April 2004 that she suffered from that condition, *see* Record at 245-77, 311, (ii) an April 2004 Clinical Assessment of Pain, *see id*. at 305, and (iii) an April 2004 RFC assessment in which he found a number of limitations that he attributed to depression and fibromyalgia, *see id*. at 306-09.

However, the Record also contains a report dated May 23, 2003 by Disability Determination Services ("DDS") examining consultant William F. Boucher, M.D., who found, despite the plaintiff's subjective complaint of a history of pain throughout her entire body over the past fifteen years, *see id.* at 189, that there was "no physical basis for the examinee's pain complaints[,]" *id*. at 190. Two DDS non-examining consultants concurred that the plaintiff had no medically determinable physical impairment. *See id*. at 210-17 (RFC assessment dated June 17, 2003 by Robert Hayes, D.O.), 218-25 (RFC assessment dated July 18, 2003 by Lawrence P. Johnson, M.D.). In so doing, one of the non-examining consultants, Dr. Johnson, specifically referenced Dr. Chernin's progress notes, observing,

4

*inter alia*: "first mention of fibromyalgia 7/25/00 but no exam to confirm trigger points or any associated complaints." *Id*. at 225.

The plaintiff acknowledges that the administrative law judge chose to credit the DDS reports; however, she suggests that his reliance upon them was undue inasmuch as (i) neither Dr. Boucher nor the DDS non-examining consultants had the benefit of Dr. Chernin's later submitted assessment of functional limitations, and (ii) Dr. Boucher failed to address the possibility that the plaintiff suffered from fibromyalgia despite noting that "[p]alpation revealed complaints of tenderness over her entire body, with no signs of pain behavior and no localized spasm or tenderness" – symptomatology that she posits is consistent with fibromyalgia. *See* Statement of Errors at 3 n.\* (quoting Record at 190).

I am unpersuaded that Dr. Chernin's April 2004 RFC assessment would have made a material difference in the assessments of Drs. Boucher, Hayes or Johnson had they seen it. That assessment sheds no light on Dr. Chernin's reasons for diagnosing the plaintiff with fibromyalgia; rather, it simply details limitations found to result from depression and fibromyalgia, the existence of which it presupposes. *See* Record at 306-09. Nor, although Dr. Boucher did not expressly mention fibromyalgia, am I prepared to assume that he entirely overlooked the possibility of its existence. While he did find the plaintiff tender to palpation over her entire body, it is far from clear that such a finding, absent localized spasm or tenderness, is suggestive of fibromyalgia. *See* Stedman's Medical Dictionary 671 (27th ed. 2000). (defining fibromyalgia as "[a] syndrome of chronic pain of musculoskeletal origin but uncertain cause"; observing, "The American College of Rheumatology has established diagnostic criteria that include pain on both sides of the body, both above and below the waist, as well as in an axial distribution (cervical, thoracic, or lumbar spine or anterior chest); additionally there must be point tenderness in at least 11 of 18 specified sites.").

5

For these reasons, the administrative law judge's declination to find that the plaintiff suffered from a severe fibromyalgia condition is supported by substantial evidence.

### B.  Treating Sources

The plaintiff next faults the administrative law judge's handling of the opinions of two treating practitioners, Dr. Chernin and Patrick McGrath, LCPC, a treating psychotherapist.  *See* Statement of Errors at 3-4.  Her argument implicates the so-called "treating physician" or "treating source" rule, pursuant to which opinions of treating sources are entitled to special consideration and in some instances controlling weight.  *See, e.g.*, Social Security Ruling 96-5p, reprinted in *West's Social Security Reporting Service,* Rulings 1983-1991 (Supp. 2004) ("SSR 96-5p"), at 123.

The plaintiff's argument, as concerns McGrath, may be readily dispatched.  Only practitioners whom the commissioner defines as "acceptable medical sources" qualify as "treating sources."  *See* 20 C.F.R. §§ 404.1502, 416.902 (defining a "treating source" as "your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.").  A therapist such as McGrath is not among practitioners recognized as an "acceptable medical source."  *See id*. §§ 404.1513(a), 416.913(a).

While an administrative law judge "may" take evidence from non-acceptable sources into consideration, *see id*. §§ 404.1513(d), 416.913(d), inasmuch as appears no particular level of deference, analysis or discussion is due that evidence, *compare, e.g*., *id*. §§ 404.1527(a)(2) & (d), 416.927(a)(2) & (d) (detailing how commissioner must weigh "medical opinions," defined as opinions from "acceptable medical sources"); *see also, e.g., Evans v. Barnhart*, 92 Soc. Sec. Rep. Serv. 568, 573-74 (D.N.H. 2003) ("[W]hile § 404.1513(d) provides that the Commissioner may use evidence from 'other sources' [such as a nurse practitioner] to evaluate the severity of a claimant's

impairment, the language of that provision is permissive rather than mandatory. In other words, it is not at all clear that the ALJ was under any obligation to consider Nurse Thomas's RFC questionnaire.").

Although Dr. Chernin, unlike McGrath, was a treating source, I find that his opinions regarding the plaintiff's pain and RFC were accorded the deference due. Dr. Chernin's pain assessment arguably qualifies as a "medical opinion," defined as an opinion "on the issue(s) of the nature and severity of an individual's impairment(s)." *See, e.g.*, Social Security Ruling 96-2p, reprinted in *West's Social Security Reporting Service,* Rulings 1983-1991 (Supp. 2004) ("SSR 96-2p"), at 111.[3] Such an opinion is entitled to controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record[.]" 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). If not given controlling weight, such an opinion must be assessed in accordance with certain enumerated factors, such as length of treatment relationship, supportability of the opinion and consistency with the record as a whole. *See id*. §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6). The commissioner must "always give good reasons in our notice of determination or decision for the weight [she] give[s] your treating source's opinion." *Id*. §§ 404.1527(d)(2), 416.927(d)(2).

Dr. Chernin's RFC assessment touched on a subject matter (RFC) with respect to which determination is reserved to the commissioner, and even opinions of a treating source are accorded no "special significance." *See id*. §§ 404.1527(e)(1)-(3), 416.927(e)(1)-(3).[4] Nonetheless, such an opinion is entitled to consideration based on the same factors mentioned above (including

---

[3] Dr. Chernin indicated that the plaintiff's pain was "present to such an extent as to be distracting to adequate performance of daily activities or work" and that physical activity such as walking, standing and bending "greatly increase[d] pain causing abandonment of tasks related to daily activities or work[.]" Record at 305. He also indicated that "medication [would] severely limit the patient's effectiveness in the work place due to distraction, inattention, drowsiness, etc." *Id*.

[4] Dr. Chernin indicated, among other things, that the plaintiff could lift no more than ten pounds frequently or occasionally, could stand *(continued on next page)*

7

supportability of the opinion and consistency with the record as a whole). *See, e.g.,* SSR 96-5p at 124 ("In evaluating the opinions of medical sources on issues reserved to the Commissioner, the adjudicator must apply the applicable factors in 20 CFR 404.1527(d) and 416.927(d)."). Even as to issues reserved to the commissioner, "the notice of the determination or decision must explain the consideration given to the treating source's opinion(s)." *Id*. at 127.

The administrative law judge expressly rejected Dr. Chernin's opinions on pain (Exhibit 14F) and RFC (Exhibit 15F) on the bases that (i) Dr. Chernin's own treatment notes contained no clinical findings to support those conclusions, which appeared to be based on the plaintiff's self-reported symptoms and limitations, (ii) the opinions were inconsistent with the treatment notes, which contained primarily diagnoses with no assessment of functional limitations arising therefrom and no indication of any debilitating condition despite the doctor's checking of boxes indicating that the plaintiff's depression and fibromyalgia were "unstable," and (iii) the opinions were inconsistent with other medical evidence of record. *See* Record at 21.

This was a fair characterization of the evidence. Dr. Chernin's notes shed no light on either the clinical signs and symptoms that led him to diagnose fibromyalgia and depression or his reasons for crediting the plaintiff's reported symptomatology. *See id*. at 245-77, 311. On some occasions, he omitted any mention of a diagnosis of fibromyalgia. *See, e.g., id*. at 248 (note of December 1, 2003), 249 (note of August 5, 2003), 251 (note of June 3, 2003). Finally, the Record did indeed contain other evidence inconsistent with that of Dr. Chernin. As noted above, Dr. Boucher of the DDS found no evidence of a physical impairment on his examination of the plaintiff. *See id*. at 189-90. A second DDS examining consultant, Joseph F. Wojcik, Ph.D., concurred that the plaintiff suffered from a mental impairment but found it to be of a lesser degree of severity than is reflected in Dr. Chernin's pain and

---

and/or walk less than two hours in an eight-hour workday, needed to alternate sitting and standing and was limited in pushing and/or
*(continued on next page)*

RFC assessments, diagnosing "[r]ule out Bipolar I Disorder, most recent episode depressed, mild versus Dysthmyic disorder." *Id*. at 187 (report dated May 19, 2003); *see also, e.g., id*. at 208 (mental RFC ("MRFC") summary by DDS non-examining consultant Thomas A. Knox, Ph.D., dated June 12, 2003, finding plaintiff capable of understanding, remembering simple instructions, carrying out simple tasks in two-hour blocks, interacting appropriately with co-workers, supervisors and adapting to minor changes in routine), 229 (substantially similar MRFC summary by DDS non-examining consultant David R. Houston, Ph.D., dated September 8, 2003).

Inasmuch as the administrative law judge considered Dr. Chernin's opinions and provided adequate reasons for rejecting them – lack of substantiation by objective medical evidence and inconsistency with other evidence of record, including Dr. Chernin's own progress notes – he committed no error in his handling of them.

### C. Pain Analysis

In her third and final point of error, the plaintiff complains that the administrative law judge failed to analyze her complaints of pain in compliance with applicable Social Security rulings and regulations and *Avery v. Secretary of Health & Human Servs*., 797 F.2d 19 (1st Cir. 1986). *See* Statement of Errors at 4-5. She asserts that (i) the administrative law judge erroneously found that she had no severe physical impairment, and (ii) even assuming *arguendo* the correctness of that finding, he erred in failing to analyze her mental impairment as a possible source of her pain as required by SSR 96-7p n.3. *See id*. For reasons discussed above, I discern no error in the administrative law judge's determination that the plaintiff suffered from no medically determinable physical impairment. Accordingly, he properly discounted the plaintiff's claimed fibromyalgia as a source of pain. *See* SSR 96-7p at 133 ("No symptom or combination of symptoms can be the basis for a finding of disability,

---

pulling with both her upper and lower extremities. *See* Record at 306-07.

no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms.").

Nor does the plaintiff make a compelling case of error predicated on footnote 3 of SSR 96-7p, which provides:

> The adjudicator must develop evidence regarding the possibility of a medically determinable mental impairment when the record contains information to suggest that such an impairment exists, and the individual alleges pain or other symptoms, but the medical signs and laboratory findings do not substantiate any physical impairment(s) capable of producing the pain or other symptoms.

SSR 96-7p at 134 n.3. In this case, the administrative law judge hardly can be said to have ignored the possibility of a medically determinable mental impairment; instead, the Record contains a rather extensive mental-health workup in the form of the reports of an examining consultant (Dr. Wojcik), two non-examining consultants (Drs. Knox and Houston) and an expert who testified at hearing (Dr. Jerome Nichols), none of whom found a somatization disorder or otherwise ascribed the pain of which the plaintiff complained to a mental disorder. *See* Record at 65-68, 183-88, 192-209, 227-44.

At hearing, counsel for the plaintiff suggested that these workups did not meet the requirements of SSR 96-7p in that (i) none of the mental-health consultants had the benefit of the administrative law judge's ultimate finding that the plaintiff's pain had no physical basis and (ii) presumably none had the benefit of Dr. Boucher's conclusion that while the plaintiff had no physically determinable impairment, she might "have significant functional limitations due to her psychiatric condition[,]" *id.* at 191, and might be suffering from a somatization disorder, *id.* at 190. I am unwilling simply to assume that the mental-health consultants never saw the report of Dr. Boucher and therefore had no inkling that a somatization disorder might be in issue. The reports of Drs. Knox and Houston and the testimony of Dr. Nichols postdated Dr. Boucher's report. *Compare id.* at 189 *with id.* at 23, 192, 231. Tellingly,

Dr. Knox made direct reference to the report of Dr. Boucher. *See id*. at 208 ("Physical CE report describes her as pleasant, cooperative + attentive."). Beyond this, while Dr. Chernin in his RFC assessment attributed the plaintiff's fatigue to both depression and fibromyalgia, he appeared to attribute her pain specifically to fibromyalgia. *See id*. at 307-08. The administrative law judge therefore committed no reversible error in omitting to find that the plaintiff suffered pain attributable to a mental impairment.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 24th day of May, 2005.

          /s/ David M. Cohen
          David M. Cohen
          United States Magistrate Judge